Kimberly A. Gulley Director of Policy Development Communications League of Kansas Municipalities 300 S.W. 8th Avenue Topeka, Kansas 66603
Dear Ms. Gulley:
You request that we reconsider Attorney General Opinion No. 2003-16, in which we concluded that a city cannot use its constitutional home rule power to exempt itself from a county solid waste management plan.
At the time we considered the opinion request, we were told only that Norton County was considering a "flow control" mechanism in its county solid waste management plan that would require all solid waste generated in the county to be disposed of at the county landfill. Concerned that some cities would, for economic reasons, want to transport their waste to facilities outside of the county, Norton County and the City of Norton inquired whether cities must comply with a solid waste management plan. After having been provided additional information, we now reconsider our conclusion.
Our understanding is that Norton County is desirous of drafting a new solid waste management plan that would, among other things, require that all solid waste generated within the incorporated cities and the unincorporated parts of the county be transported to and disposed of at the county landfill. The reason for this requirement is to ensure the financial viability of the county landfill through "tipping fees" based upon the amount of solid waste deposited (i.e. more trash, more fees).
The problem is that the fees must be sufficient to financially sustain the landfill. Therefore, the County would like to include in its solid waste management plan the aforementioned "flow control" provision. Norton County anticipates objection from some cities that either haul their city-generated solid waste to landfills outside the county or that contract with private trash collectors to haul to facilities other than the county landfill.
Counties are responsible for drafting and implementing a plan for the management of solid waste in the county.[1] A solid waste management committee composed of a variety of individuals, including representatives from the cities,[2] develops the plan which is then adopted by the county commission[3] and submitted to the Kansas Department of Health and Environment (KDHE) for its approval.[4] While K.S.A. 65-3405(i) requires a county to implement the plan, there is no provision in K.S.A.65-3405 or any of the solid waste management statutes that requires
cities to comply with a plan that mandates that all solid waste generated within incorporated cities be deposited at the county landfill. There are civil and criminal penalties for collecting or transporting solid waste in violation of KDHE regulations, but no statutory penalties for non-compliance with a solid waste management plan.[5]
The reference in Attorney General Opinion No. 2003-16 to a city's home rule authority to exempt itself from a county solid waste management plan is not the issue. While the solid waste management statutes, including K.S.A. 65-3405, apply uniformly to all cities,[6] this simply means that a city cannot use its home rule power to charter out of the solid waste management statutes.[7] The question you present now is whether an objecting city could simply enact an ordinary home rule ordinance or an ordinance promulgated under the authority of K.S.A. 65-3410 to address solid waste collection and disposal at a facility designated by the city.
K.S.A. 65-3410 authorizes cities to "provide for the . . . collection, transportation . . . and disposal of solid waste generated within its boundaries." To accomplish those ends, a city "may adopt ordinances, . . . regulations and standards for the storage, collection, transportation . . . and disposal of solid wastes" provided such regulations conform with KDHE regulations.[8] In short, cities are specifically authorized by K.S.A. 65-3410 to dispose of city-generated solid waste — the only limit being that the ordinance must conform to KDHE regulations, which currently are silent regarding flow control.[9]
If a city chose to enact an ordinary home rule ordinance that provides for collection of city-generated solid waste and subsequent disposal in a facility not blessed by the county solid waste management plan, such ordinance would not run afoul of Article 12, Section 5 of the Kansas Constitution because there is no conflict with the solid waste management statutes nor has the State preempted cities from legislating in this area.[10]
While our prior opinion indicates that KDHE interprets K.S.A. 64-3405 to mean that only one plan can be approved for each county or group of counties, this assumes that the objecting cities are planning to submit their own plan for approval by KDHE.[11]
We are now informed that this is not the case. Therefore, while KDHE's interpretation of K.S.A. 65-3405 may be correct, it is not relevant to the issue at hand.
Summarizing, it is our opinion that while K.S.A. 65-3405 requires a county to adopt and implement a solid waste management plan, cities are not statutorily required to comply with a plan provision requiring that all solid waste generated within incorporated cities be disposed of at the county landfill if a city ordinance provides otherwise. Upon consideration of additional factual information provided to us, those portion of Attorney General Opinion No. 2003-16 regarding a city's ability to exempt itself from a solid waste management plan are hereby withdrawn.
Sincerely,
 PHILL KLINE Attorney General of Kansas
 Mary Feighny Assistant Attorney General
PK:JLM:MF:jm
[1] K.S.A. 65-3405(a).
[2] K.S.A. 65-3405(b).
[3] K.S.A. 65-3405(d).
[4] K.S.A. 65-3405(l).
[5] K.S.A. 65-3409; 65-3419. KDHE regulations can be found at K.A.R.28-29-21 et seq. None speak to flow control.
[6] Attorney General Opinion No. 84-97.
[7] "Any city may by charter ordinance elect . . . that the whole or any part of any enactment of the legislature applying to such city . . . shall not apply to such city." Kan. Const., Art. 12, §5(c)(1) (emphasis added).
[8] K.S.A. 65-3410(b); K.A.R. 28-29-21 et seq.
[9] Note 5.
[10] "City ordinance should be permitted to stand unless actual conflict exists between the ordinance and a statute, or unless legislature has clearly preempted the field so as to preclude municipal action. [Legislative] intent to reserve to the state exclusive jurisdiction to regulate an area must be clearly manifested by statute before it can be held that the state has withdrawn from the cities the power to regulate in the field. McCarthy v. City of Leawood, 257 Kan. 566,569 (1995) (emphasis added).
[11] A county may delegate to a "designated city" the responsibility for preparing, adopting, and implementing a county plan. K.S.A. 65-3405(a); 65-3402(p).